1  **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

9  Kelly Joe Grubbs,                    )    CIV 14-8128-PCT-MHB
                                        )
10               Plaintiff,             )    **ORDER**
                                        )
11  vs.                                 )
                                        )
12  Carolyn W. Colvin, Commissioner of the)
    Social Security Administration,     )
13                                      )
                 Defendant.             )
14  _____)

15          Pending before the Court is Plaintiff Kelly Joe Grubbs's appeal from the Social

16  Security Administration's final decision to deny her claim for supplemental security income.

17  After reviewing the administrative record and the arguments of the parties, the Court now

18  issues the following ruling.

19                      **I. PROCEDURAL HISTORY**

20          Plaintiff filed an application for supplemental security income in April 2011, alleging

21  disability beginning April 20, 2011. (Transcript of Administrative Record ("Tr.") at 62, 148-

22  57, 182.) His application was denied initially and on reconsideration. (Tr. at 32-41, 44-58.)

23  Thereafter, Plaintiff requested a hearing before an administrative law judge, and a hearing

24  was held on January 16, 2013.  (Tr. at 6-31.)  On February 25, 2013, the ALJ issued a

25  decision finding that Plaintiff was not disabled.  (Tr. at 59-79.)  The Appeals Council denied

26  Plaintiff's request for review (Tr. at 1-5), making the ALJ's decision the final decision of the

27  Commissioner.  Plaintiff then sought judicial review of the ALJ's decision pursuant to 42

28  U.S.C. § 405(g).

1

## II.  STANDARD OF REVIEW

2      The Court must affirm the ALJ's findings if the findings are supported by substantial

3  evidence and are free from reversible legal error.  See Reddick v. Chater, 157 F.3d 715, 720

4  (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence

5  means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might

6  accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

7  (1971); see Reddick, 157 F.3d at 720.

8      In determining whether substantial evidence supports a decision, the Court considers

9  the administrative record as a whole, weighing both the evidence that supports and the

10  evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ

11  is responsible for determining credibility, resolving conflicts in medical testimony, and for

12  resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see

13  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably

14  support either affirming or reversing the [Commissioner's] conclusion, the court may not

15  substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

16

## III.  THE ALJ'S FINDINGS

17      In order to be eligible for disability or social security benefits, a claimant must

18  demonstrate an "inability to engage in any substantial gainful activity by reason of any

19  medically determinable physical or mental impairment which can be expected to result in

20  death or which has lasted or can be expected to last for a continuous period of not less than

21  12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for

22  benefits by following a five-step sequential evaluation:

23      (1)  determine whether the applicant is engaged in "substantial gainful activity";

24      (2)  determine whether the applicant has a medically severe impairment or
    combination of impairments;

25

26      (3)  determine whether the applicant's impairment equals one of a number of listed
    impairments that the Commissioner acknowledges as so severe as to preclude the
    applicant from engaging in substantial gainful activity;

27

28

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work.  See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 20, 2011 – the alleged onset date. (Tr. at 64.)  At step two, she found that Plaintiff had the following severe impairments: obesity, lumbar degenerative disc disease, and major depressive disorder. (Tr. at 64-65.)  At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 65-66.)  After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 416.967(b).  He can frequently operate foot controls with the left lower extremity.  He can occasionally climb ladders, ropes, and scaffolds.  He can frequently climb ramps and stairs.  He can frequently balance, stoop, kneel, crouch and crawl.  Left overhead reaching is limited to occasional.  He should avoid concentrated exposure to dangerous machinery with moving mechanical parts and unprotected heights that are high or exposed.  He is limited to simple, routine and repetitive tasks.  He is limited to occasional interaction with others, including the public, co-workers and supervisors.  He is unable to work in tandem with others, but he can still be in the vicinity of others.  He should be employed in a low stress job, which the undersigned defines as work with only occasional decision-making required, occasional changes in the work setting, and no fast-paced production rate

requirements."[1]  (Tr. at 66-72.)  The ALJ determined that Plaintiff is unable to perform any past relevant work, but that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. at 72-73.)

Therefore, the ALJ concluded that Plaintiff "has not been under a disability ... since April 20, 2011, the date the application was filed."  (Tr. at 73-74.)

## IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; (2) failing to properly consider his subjective complaints; and (3) failing to properly assess his residual functional capacity.  Plaintiff requests that the Court remand for determination of benefits.

**A.    Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by rejecting "treating provider opinions contrary to case law and regulations."  Plaintiff appears to refer to the opinions of Physician's Assistant, Robert Nordman; Don Graber, M.D.; F.S. Gagliardi, M.D.; K.E. Apodaca, M.D.; and Aileen Lee, Ph.D.

"The ALJ is responsible for resolving conflicts in the medical record."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164.  Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record.  In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight."  Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.

[1]  "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 4 -

2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).  A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(d)(2).  On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight.  Orn v. Astrue, 495 F.3d 624, 631 (9th Cir. 2007).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons.  See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830).  If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record."  Id. (quoting Lester, 81 F.3d at 830).

Since the "treating provider opinions" Plaintiff refers to were contradicted by other examining and state agency physicians, as well as, other objective medical evidence of record, the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

In her consideration of the objective medical evidence, the ALJ first addressed the opinion of Physician's Assistant, Mr. Nordman – giving little weight to his assessment.  (Tr. at 70.)  Mr. Nordman completed a checkbox questionnaire, dated November 2011, in which he assessed numerous moderate limitations in functioning.  (Tr. at 460-61.)  The form he

1    filled out defined moderate as "claimant's impairments affect but do not preclude ability to
2    function." (Tr. at 460.)  Three months later, he filled out an identical form that indicated
3    much more severe functional limitations. (Tr. at 462-63.)  This form was co-signed by Dr.
4    Gagliardi.  (Tr. at 463.)  Ten months later, he filled out a similar form that indicated
5    Plaintiff's limitations were even more extreme. (Tr. at 469-70.)  This form was co-signed
6    by Dr. Graber.  (Tr. at 470.)

7            The ALJ rejected the overall opinion of Mr. Nordman (as well as the opinions of Drs.
8    Graber and Gagliardi) finding that the opinion was "vague and imprecise" and lacked any
9    explanation or support for the assessed limitations. (Tr. at 70.)  The ALJ also noted that the
10   opinion indicated a serious worsening in Plaintiff's mental health symptoms over time, when
11   the treatment records failed to reflect such a decompensation.  These were valid reasons for
12   affording the opinion of Mr. Nordman – and Drs. Graber and Gagliardi – little weight.  "The
13   ALJ need not accept the opinion of any physician, including a treating physician, if that
14   opinion is brief, conclusory, and inadequately supported by clinical findings." Chaudhry v.
15   Astrue, 688 F.3d 661, 671 (9th Cir. 2012); see Bray, 554 F.3d at 1228; Batson v. Comm'r
16   Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating
17   physicians' opinions that are conclusory, brief, and unsupported by the record as a whole ...
18   or by objective medical findings ... ."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.
19   2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a
20   treating physician's opinion that is conclusory and brief and unsupported by clinical
21   findings.").

22           Next, the ALJ considered the opinion of Dr. Apodaca. (Tr. at 70-71.)  In June 2012,
23   Dr. Apodaca completed a checkbox form in which she opined Plaintiff had an "extreme"
24   degree of physical impairment that would effectively preclude competitive employment. (Tr.
25   at 466-68.)  This form also indicated that it was intended to supplement a narrative report,
26   but Dr. Apodaca provided no accompanying narrative and did not fill out the "Remarks"
27   section. (Tr. at 468.)  The ALJ found the opinion deserved "little weight" because it was not
28   supported by Dr. Apodaca's own treatment notes and provided little explanation for the

1    conclusions on the checkbox form.  (Tr. at 70-71.)  Dr. Apodaca's treatment notes document

2    largely unremarkable physical examinations, with no evidence of gait disturbance, poor

3    coordination, or bad posture.  (Tr. at 70, 518, 523, 526, 530, 533, 536, 540, 543-44.)  Thus,

4    the ALJ reasonably found that Dr. Apodaca's own treatment notes did not support the

5    debilitating limitations she assessed on the checkbox form.  See 20 C.F.R. § 404.1527(c)(3)

6    ("The better an explanation a source provides for an opinion, the more weight we will give

7    that opinion."); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that

8    the ALJ may permissibly reject check-off reports that do not contain any explanation of the

9    bases of their conclusions."); Batson, 359 F.3d at 1195.

10         As to Dr. Lee, who examined Plaintiff at the request of the state agency, the ALJ gave

11   "little weight" to her conclusions.  (Tr. at 71.)  Dr. Lee examined Plaintiff in February 2012.

12   (Tr. at 451-55.)   Dr. Lee did not assess any specific functional limitations that were

13   incompatible with full-time work (Tr. at 454), but she stated that Plaintiff's "lack of prior

14   vocational success coupled with his current depression and bodily pain renders him a poor

15   prospect at this point to succeed in any work environment" (Tr. at 453).  The ALJ discounted

16   Dr. Lee's opinion because her own examination results did not support her opinion and

17   because it was vague.  (Tr. at 71.)  Furthermore, Dr. Lee failed to assess any functional

18   limitations that would preclude employment.  Rather, she made conclusory statements

19   regarding Plaintiff's physical impairments and his "lack of prior vocational success."  (Tr.

20   at 453.)  See McLeod v. Astrue, 640 F.3d 881, 884-85 (9th Cir. 2011) (recognizing doctors

21   lack the requisite vocational expertise to opine about employability); Bray, 554 F.3d at 1228;

22   Batson, 359 F.3d at 1195; Tonapetyan, 242 F.3d at 1149.  "Internal inconsistencies" in a

23   medical opinion are a relevant factor for an ALJ to consider, and "[d]etermining whether

24   inconsistencies are material (or are in fact inconsistencies at all) ... falls within [the ALJ's]

25   responsibility."  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999).

26   As the ALJ noted, the mini-mental status examination was the only testing Dr. Lee

27   administered, and it indicated only a mild degree of cognitive impairment, by Dr. Lee's own

28   account.  (Tr. at 71, 454.)

1    In sum, the Court finds that the ALJ properly weighed the medical source opinion

2    evidence, and gave specific and legitimate reasons, based on substantial evidence in the

3    record, for discounting the "treating provider opinions." Therefore, the Court finds no error.

4    **B.      Plaintiff's Subjective Complaints**

5    Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence

6    of clear and convincing reasons for doing so.

7    To determine whether a claimant's testimony regarding subjective pain or symptoms

8    is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine

9    whether the claimant has presented objective medical evidence of an underlying impairment

10   'which could reasonably be expected to produce the pain or other symptoms alleged.' The

11   claimant, however, 'need not show that her impairment could reasonably be expected to

12   cause the severity of the symptom she has alleged; she need only show that it could

13   reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d

14   1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first

15   test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony

16   about the severity of her symptoms only by offering specific, clear and convincing reasons

17   for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's

18   testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.

19   2007). The ALJ must identify "what testimony is not credible and what evidence undermines

20   the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

21   In weighing a claimant's credibility, the ALJ may consider many factors, including,

22   "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

23   prior inconsistent statements concerning the symptoms, and other testimony by the claimant

24   that appears less than candid; (2) unexplained or inadequately explained failure to seek

25   treatment or to follow a prescribed course of treatment; and (3) the claimant's daily

26   activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-

27

28

1    39.[2]  The ALJ also considers "the claimant's work record and observations of treating and

2    examining physicians and other third parties regarding, among other matters, the nature,

3    onset, duration, and frequency of the claimant's symptom; precipitating and aggravating

4    factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284

5    (citation omitted).

6          As detailed by the ALJ in her decision, Plaintiff alleges persistent back and feet pain

7    resulting in difficulty sitting and standing.  (Tr. at 67.)  He testified that he is unable to sit or

8    stand for too long due to back pain and "constant" spasms.  His back and left shoulder pain

9    limits his ability to reach and lift, and he is unable to carry heavy things.  He testified that he

10   is able to lift no more than eight pounds and can sit for no more than 30-45 minutes.  He also

11   indicated that he is able to stand for no more than 15 minutes at a time, and can only walk

12   for 4-5 minutes.  Plaintiff also alleged ongoing depression with psychosis, and described his

13   symptoms as "sadness" that sometimes prevents him from getting out of bed.  He also noted

14   hallucinations and racing thoughts.  (Tr. at 67.)

15         Having reviewed the record along with the ALJ's credibility analysis, the Court finds

16   that the ALJ made sufficient credibility findings and identified multiple clear and convincing

17   reasons supported by the record for discounting Plaintiff's statements regarding his pain and

18   limitations.   Although  the  ALJ  recognized  that  Plaintiff's  medically  determinable

19   impairments could reasonably be expected to cause the alleged symptoms, she also found that

20   Plaintiff's  statements  concerning  the  intensity,  persistence,  and  limiting  effects  of  the

21   symptoms were not fully credible.  (Tr. at 67-70.)

22

23

24

25       [2]  With respect to the claimant's daily activities, the ALJ may reject a claimant's
     symptom testimony if the claimant is able to spend a substantial part of her day performing
26   household chores or other activities that are transferable to a work setting.  See Fair, 885 F.2d
     at 603.  The Social Security Act, however, does not require that claimants be utterly
27   incapacitated to be eligible for benefits, and many home activities may not be easily
     transferable to a work environment where it might be impossible to rest periodically or take
28   medication.  See id.

1    The ALJ first addressed Plaintiff's activities of daily living finding that said activities
2    were not limited to the extent that would be expected if his allegations were fully credible.
3    (Tr. at 67.)  "[I]f the claimant engages in numerous daily activities involving skills that could
4    be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon
5    making specific findings relating to the claimant's daily activities." Bunnell v. Sullivan, 947
6    F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d
7    1228, 1234-35 (9th Cir. 2010) (claimant's activities suggested a greater functional capacity
8    than alleged).  In May 2011, Plaintiff complained of increased back pain because he had been
9    doing yard work, including mowing the lawn and using a weed eater.  (Tr. at 67, 254, 272.)
10   About a year and a half later, Dr. Graber noted that Plaintiff was performing chores around
11   the place he lived, even though he had recently experienced an exacerbation of mental health
12   symptoms after he stopped taking his medication.  (Tr. at 67, 472.)  In contrast, Plaintiff
13   testified that he was so impaired he could not stand for more than 15 minutes or walk for
14   more than 4 or 5 minutes at a time.  (Tr. at 18, 67.)  The ALJ reasonably found Plaintiff to
15   be less-than-fully credible in light of evidence he was performing household chores,
16   including yard work, during the alleged period of disability.  While not alone conclusive on
17   the issue of disability, an ALJ can reasonably consider a claimant's daily activities in
18   evaluating the credibility of his subjective complaints. See, e.g., Stubbs-Danielson v. Astrue,
19   539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility determination based in part
20   of the claimant's abilities to cook, clean, do laundry, and help her husband with the finances);
21   Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (upholding ALJ's credibility
22   determination based in part on the claimant's abilities to cook, clean, shop, and handle
23   finances).

24   Next, the ALJ discussed Plaintiff's treatment history finding that his treatment has
25   been largely routine and conservative, and his impairments have responded well to treatment.
26   (Tr. at 67-68.)  A conservative course of treatment is sufficient to discount a claimant's
27   testimony regarding severity of an impairment.  See Johnson v. Shalala, 60 F.3d 1428, 1434
28   (9th Cir. 1995) (evidence of "conservative treatment" is sufficient to discount a claimant's

1   testimony regarding severity of an impairment).  Evidence that a claimant responded well to

2   such treatment also undermines allegations of disabling limitations.  See Tommasetti v.

3   Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).  As the ALJ noted, Plaintiff's back and shoulder

4   pain responded well to physical therapy treatment in 2011.  (Tr. at 67-68, 253-66.)  In August

5   2011, he told Lucia McPhee, M.D., that he was not performing any of the home exercises for

6   his back and shoulder.  (Tr. at 379.)  His physical therapy records are inconsistent with his

7   testimony that his back and shoulder were still significant, ongoing problems that prevented

8   him from working.  (Tr. at 16-17.)  Moreover, Plaintiff reported he did not need to use his

9   narcotic pain medication every day.  (Tr. at 68, 286, 379.)

10       Plaintiff's mental health also showed significant improvement after he initiated

11   treatment in April 2011.  (Tr. at 69.)  By June 2011, Mr. Nordman was noting that Plaintiff

12   was still "mildly anxious and depressed" and "[s]till depressed some," but "much improved."

13   (Tr. at 69, 286-87.)  He had not experienced any hallucinations since he started taking

14   medication.  (Tr. at 69, 287.)  In January 2012, he reported he was happy with his medication

15   regiment and thinking about going back to work, even though he still had significant

16   depression and was unsure of his ability to handle the customer service aspects of his new

17   job.  (Tr. at 69, 509-11.)  In May 2012, he stopped taking all of his medications because he

18   did not believe they were helping.  (Tr. at 69, 499.)  As a result, he experienced

19   hallucinations and some increased paranoia.  (Tr. at 69, 500.)  However, he stabilized

20   immediately upon restarting his medication.  (Tr. at 69, 501.)  By October 2012, he was

21   "[d]oing better back on the meds," which were "working well," even though he had recently

22   had trouble with his pharmacy.  (Tr. at 69, 481-85.)  Dr. Apodaca described him as being

23   friendly and cooperative, displaying a normal mood and affect, being fully oriented, and

24   presenting as appropriately dressed, kept, and hygienic during her numerous treatment

25   sessions.  (Tr. at 69, 273, 276, 280, 376, 518, 523, 526, 530, 533, 536, 540, 543.)

26       The ALJ also noted that Plaintiff had a sporadic work history and left his last job for

27   reasons unrelated to his impairments.  (Tr. at 68-69.)  The fact that a claimant stopped work

28   for reasons other than his impairments is a valid reason credibility consideration.  See Bruton

1    v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001).  A "poor work history" is also a valid

2    credibility factor for an ALJ to consider.  See Thomas v. Barnhart, 278 F.3d 948, 959 (9th Cir.

3    2002) (upholding ALJ's finding that claimant's alleged symptoms related to a slip-and-fall

4    injury were not entirely credible because she had an "extremely poor work history" and "has

5    shown little propensity to work in her lifetime").  When Plaintiff initiated mental health

6    treatment in April 2011, he told the intake therapist he last worked for about a year and a half

7    as a shipping clerk, which he found "was an easy job" for him, until his employer requested

8    he take a second urinalysis test, at which point he quit.  (Tr. at 68, 316.)  The fact Plaintiff

9    left his last job over his employer's drug-use policy, and not because his impairments

10   interfered with his ability to work, was a valid credibility issue.  Furthermore, Plaintiff has

11   a very sporadic work history, and a history of heavy drug use from a relatively early age.

12   (Tr. at 68-69, 158-59, 320.)

13        Additionally, the ALJ found minimal objective evidence supporting Plaintiff's

14   complaints of physical impairment.  (Tr. at 68.)  An ALJ may consider the objective medical

15   evidence when evaluating a claimant's credibility, as long as it is not the only factor

16   supporting the credibility assessment.  See Bray, 554 F.3d at 1227.  An MRI taken in July

17   2011 revealed only mild spinal abnormalities.  (Tr. at 68, 373-74.)  X-rays taken the

18   following month revealed evidence of spina bifida occulta, which is a minimal abnormality

19   that typically produces no symptoms.  (Tr. at 68, 243.)

20        Lastly, the ALJ also found that Plaintiff's description of his depressive symptoms has

21   been vague and general.  (Tr. at 69.)  An ALJ may use ordinary techniques of credibility

22   evaluation, which includes consideration of the vagueness or specificity of the claimant's

23   allegations.  See Tommasetti, 533 F.3d at 1040.

24        In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's

25   allegations not entirely credible.  While perhaps the individual factors, viewed in isolation,

26   are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor

27   is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors

28   that led to the ALJ's decision.  The Court concludes that the ALJ has supported his decision

1  to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,

2  the Court finds no error.

3  **C.      The ALJ's Residual Functional Capacity Assessment**

4          Plaintiff argues that the ALJ erred by failing to properly assess his residual functional

5  capacity.    Specifically, Plaintiff states, "[t]he opinions of all treating and examining

6  psychological providers - Robert Nordman, PA, Dr. Gagliardi, MD, Dr. Graber, MD, and A

7  Lee, PhD - all opine limitations that preclude substantial gainful activity. TR 453, 461-465,

8  TR 28-29 (vocational testimony). The ALJ erred in not including these severe limitation in

9  the residual functional capacity."

10         The Court construes Plaintiff's argument as an extension of the argument alleging that

11 the ALJ erred in failing to properly weigh medical source opinion evidence – which this

12 Court has already addressed.  In any event, the Court finds that the ALJ's residual functional

13 capacity assessment is supported by substantial evidence as she properly addressed both the

14 objective medical evidence of record and Plaintiff's credibility in finding that Plaintiff

15 retained "the residual functional capacity to perform light work as defined in 20 CFR

16 416.967(b)."  The Court finds no error.

17                               **V.  CONCLUSION**

18         Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for

19 supplemental security income in this case.  Consequently, the ALJ's decision is affirmed.

20         Based upon the foregoing discussion,

21         **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social

22 Security be affirmed;

23         **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

24 accordingly.  The judgment will serve as the mandate of this Court.

25         DATED this 24th day of September, 2015.

26

27

28
                                    Michelle H. Burns
                                    Michelle H. Burns
                                    United States Magistrate Judge